IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Linda Ann Tyler,                                          )
                                                         )        Civil Action No.8:09-377-CMC-BHH
                        Petitioner,                       )
                                                         )
        v.                                               )        **REPORT AND RECOMMENDATION**
                                                         )        **OF MAGISTRATE JUDGE**
Catherine T. Kendell,                                    )
Warden of Leath                                          )
Correctional Institution,                                )
                                                         )
                        Respondent.                      )
_____                )


        The Petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code,

Section 2254. This matter is before the Court on the Respondent's Motion for Summary

Judgment. (Dkt. # 16.)

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial

petitions for relief and submit findings and recommendations to the District Court.

        The Petitioner brought this habeas action on February 12, 2009.[1]  On July 10, 2009,

the Respondent moved for summary judgment. By order filed July 15, 2009, pursuant to

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the

summary judgment dismissal procedure and the possible consequences if he failed to

adequately respond to the motion. On August 3, 2009, the Petitioner filed a response

opposing the Respondent's Summary Judgment Motion.

_____

        [1]There is not a prison mailroom stamp on the envelope containing the petition.
*Houston v. Lack*, 487 U.S. 266 (1988)(holding document considered filed upon delivery to
prison officials for forwarding to court). Therefore, the undersigned is using the postmark
date as the filing date. (Pet. Attach.)

# I. PROCEDURAL HISTORY/FACTS

The Petitioner, a state prisoner, is currently incarcerated at the Leath Correctional Institution. The South Carolina Supreme Court recited the underlying facts as follows:

> On the morning of September 26, 1996, while riding as a passenger in a car driven by her husband Van, Tyler poured gasoline on her husband's head and used her cigarette lighter to "light him up." She did so because she had learned the day before that a next door neighbor was 2 weeks pregnant with his child. Van Tyler died the following day of third degree burns and inhalation injury.

*State v. Tyler*, 560 S.E.2d 888, 889 (S.C. 2002).

In October 1996, the Petitioner was indicted for the murder of her husband. (App. 719.)[2] The Petitioner was initially represented at the trial level by Douglas Strickler Esquire. However, she ultimately was represented by Assistant Public Defenders Christa Bell and Teresa Johns. On February 23, 1998, a pre-trial hearing was held before the Honorable Paul Short to determine the Petitioner's competency to stand trial. The Petitioner was found competent and her jury trial began on March 16, 1998. On March 19, 1998, the jury found the Petitioner guilty but mentally ill ("GBMI"). (App. 704.) Based upon the Petitioner's prior record, Judge Short sentenced the Petitioner to life without parole ("LWOP") pursuant to the South Carolina recidivist statute, S.C. Code Ann. § 17-24-45. The Petitioner timely filed a notice of appeal.

Senior Assistant Appellate Defender Wanda H. Haile was appointed to represent the Petitioner in her direct appeal. On August 29, 2001, Haile filed a final brief with the South Carolina Court of Appeals raising the following issues:

---

[2]The undersigned notes that the Appendix begins with a 46-page transcript from the Petitioner's competency hearing. (App. 1-46.) Immediately following this, the Appendix continues with the transcript of the Petitioner's trial. However, the numbering of the Appendix begins again at 1 with the start of the Petitioner's trial.

1. The lower court erred in allowing appellant's confession into evidence at trial.

2. The lower court erred in denying appellant's request for an involuntary manslaughter charge.

3. The lower court erred in denying appellant's directed verdict and new trial motions because appellant's actions did not result in the proximate cause of her husband's death.

4. The lower court erred in ruling that appellant was mentally competent to stand trial.

5. The lower court erred in making an improper analogy between the offenses of aggravated assault and voluntary manslaughter during the jury c

(State's Return Attach. # 15 at 2.) On March 4, 2002, the South Carolina Supreme Court affirmed the Petitioner's conviction and sentence in *State v. Tyler*, 560 S.E.2d 888. (App. 713-718.) The Petitioner filed a pro se Petition for Rehearing, which was denied on April 3, 2002. (State's Return Attach. # 18 and 19.) The Remittitur was issued the same day. (State's Return Attach. # 19.)

On May 6, 2002, the Petitioner then filed a pro se application for post-conviction relief ("PCR") raising the following grounds for relief, quoted verbatim:

a) Trial Judge denied the Rights to Due Process of Law, Perjury.

Denied the rights to hypnosis. Stated he knew of know use of it. Complusory.

b) Prosecution misconduct conceal order to exhumed the deceased, Fraud.

Judge Thomas W. Cooper, Jr. Order the Body to be EXHUMED, Prosecution conceal the Murder and Fraud.

c) Attorney failed to ask for mistrial, failed to submit scientific proof of autopsy

Failed to ask for a mistrial, state witness did not appear, failed to offer any scientific evidence.

(App. 724.) The Petitioner also alleged in attachments to her PCR application that: 1) she was never indicted by the Grand Jury; 2) the solicitor committed Brady violations; and 3) her Miranda rights had been violated. (App. 728-732.) Finally, the Petitioner attached exhibits (App. 743- 748) and documents entitled "An Essay on the United States Constitution" (App. 733-735) and "An Essay on the South Carolina Constitutional Law." (App. 736.)

On November 18, 2005, an evidentiary hearing was held before the Honorable Alison R. Lee. (App. 759.) The Petitioner was present and represented by Charlie J. Johnson, Jr., Esquire. On July 3, 2006, Judge Lee denied the Petitioner's application for PCR. (App. 822.) The Petitioner filed a notice of appeal. (App. 827.)

Assistant Appellate Defender Katherine H. Hudgins of the South Carolina Office of Appellate Defense represented the Petitioner on her PCR appeal. On February 28, 2007, Hudgins filed a petition to be relieved as counsel and a *Johnson* petition raising the following issue: "Was trial counsel ineffective in failing to argue voluntary manslaughter when there was evidence of abuse at the hands of the husband/victim, the defendant believed the victim sodomized her 2 ½ year old daughter and the defendant learned the night before the incident that another woman was carrying her husband's baby?" (State's Return Attach. # 22.)

On April 9, 2007, the Petitioner filed a pro se brief raising the following issues, quoted verbatim:

1. Subject Matter jurisdiction.

2. Defect of Indictment.

3. Defendant was questioned without the presence of counsel.

4. State used Information gained from defendant.

5. Violation of Miranda Rights, 5th Amendments.

6. Ineffective Assistance of Counsel.

7. 4th Amendment Rights Violation.

8. Used of Prior Acts. S.C.R.E. Code 609.

9. Approximate Cause of Death

10. Prosecution Misconduct: Inflamotory Statements.

11. Trial Judge, denied due process of law.

12. Ineffective Assistance of Counsel.

13. Ineffective Assistance of Appellate Court Counsel.

(State's Return Attach. # 23 at 10.) On February 6, 2008, the South Carolina Supreme Court denied the petition and granted Hudgins' motion to be relieved as counsel. (State's Return Attach. # 24.) The remittitur was sent down on February 26, 2008. (State's Return Attach. # 25.) On February 29, 2008, the Petitioner filed a petition for rehearing and on March 7, 2008, the clerk of the South Carolina Supreme Court sent a letter to the Petitioner telling her that her petition for rehearing was untimely. (State's Return Attach. # 26.) On April 16, 2008, the court denied the Petitioner's petition for reinstatement. (State's Return Attach. # 27.)

In this federal habeas petition, the Petitioner raises the following grounds for relief, quoted verbatim:

> **Ground One:** Death Certificate was Altered: Obstruction of Justice Faslefiling Fase Data
>
> **Supporting Facts:** Augusta Burn Center listed death "Undetermined" Burn injury was not the cause of death. Signed by Dr. Joseph M. Still, Jr., Plastic Surgeon, Georgia DHEC. Cornor: Frank E. Barron, III, altered the death certificate and wrote cause of death (Murder). I.S. Levy Furnal Director signed body not autopsy. The body was place in a body bag for disease, contamination buried in bag.
>
> **Ground Two:** No Scientific Proof to show the body being Autopsy, No Eye witness, or slides, photos as Evi.
>
> **Supporting Facts:** The "Pathologist "alleged that(he) performed an autopsy on Van Tyler, Jr., on 9-29-96. Defendant

5

"states body was not autopy "victim" was Muslim. Victim was buried in a body bag on the date allege autopsy was performed. The Prosecution Atty. Has no physical or scientific proof of the allege autopsy report. The State presented a false report. Pathologist used a body chart.

**Ground Three:** Miranda Rights were violated during Arrest and at trial to be a witness against self.

**Supporting Facts:** Investigator "T.Gray" had the "Defendant " escorted from the hospital, Forced a "statement" from the Defendant " then read the "Defendant" the Miranda Rights". Atty.'s put the Defendant on stand while the "defendant" was under medication of psyco drugs. The Defendant was a patience at the William S. Hall Inst. During her trial and prior to her trial.

**Ground Four:** Ineffective Assistance of Counsel False Representation exclude evidence of (Rape)

**Supporting Facts:** Defense Atty.'s excluded evidence of daughter's rape "Child" was (2 ½) two years and six months old. Defense Atty. Stated that it was mitigation circumstances but, they were using "Insanity Defense" because death was not caused by the (Defendant). Defense Atty. failed to apply (S.C. Code Ann. Law: 19-25-90) Battered Women Statute as a defense. Coerced (Defendant ) to testify.

(Habeas Pet. 6-11.)

## II. **APPLICABLE LAW**

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations,

a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

### Habeas Standard of Review

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

### EXHAUSTION AND PROCEDURAL BAR

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (I) there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP.

Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007). Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and

actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

## III. DISCUSSION

**Ground One**

In Ground One, the Petitioner contends that the death certificate of the victim was falsified and altered to change the cause of death from "undetermined" to "homicide." Furthermore, the Petitioner asserts that the victim was not autopsied, and she wants his body exhumed. The Petitioner states that her attorneys "failed to request the motion of resserection of the body." (Pet. at 5.) The Respondent contends these issues are raised as free-standing issues and thus procedurally barred and without merit.

As noted above, while riding in a car, the Petitioner poured gasoline on her husband and used a cigarette lighter to set him on fire. He later died at the August Burn Center in Georgia. The Petitioner does not dispute that she set her husband on fire. (App. 776.) However, she contends that she did not kill him because he died from an intervening cause, i.e. medical negligence while being treated for his burns at the August Burn Center.

Pathologist Dr. Ronald Burns testified at trial that he performed an autopsy on the victim, and he determined that the victim had died from extensive burns, which resulted in

pneumonia and sepsis. Dr. Burns listed these as the causes of death on the South Carolina death certificate. (App. 290-91; 301-02.) However, a death certificate from Georgia, where the victim died, listed the causes of death as 56% third degree burns and inhalation injury, as well as rhabdomyolysis. (App. 305.)

At trial, the defense presented an expert on the proximate cause of death of the victim and whether it directly related to the burns or to improper resuscitation from medical professionals. The Petitioner's medical expert, Dr. H.D. Peterson, testified that he had reviewed both death certificates and the autopsy report in coming and he concluded that the victim had been over-resuscitated, which he opined caused his death. Thus, he disputed the causes of death as listed on both the Georgia and South Carolina death certificates. (App. 555; 561-64; 567- 68.)

At trial, there was no testimony or argument regarding any alleged falsification of the death certificates or the autopsy. Furthermore, these issues were not raised on direct appeal. Although the Petitioner raised some of these issues in her pro se petition for rehearing on direct appeal, new claims cannot be raised for the first time in a petition for rehearing. *Kennedy v. South Carolina Retirement Sys.*, 564 S.E.2d 322 (S.C. 2001) (holding argument on rehearing will not be considered as it was never presented to the Court prior to the petition for rehearing)). Thus, to the extent that the petitioner is raising these issues as free-standing issues, these issues are procedurally barred.

The Petitioner, however, arguably raises at least one of the issues encompassed in this ground in the context of an ineffective assistance of counsel claim. The Petitioner specifically alleges in her habeas petition that her attorneys failed to move for the victim's body to be exhumed. (Pet. at 5.) She raised that issue during her PCR hearing, and the PCR judge ruled on this issue. (App. 824.) Therefore, the undersigned declines to conclude that this ground alleges only free standing issues which are procedurally barred. However, in any event, the ineffective assistance of counsel claim fails on the merits.

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, i.e. "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697. Review of counsel's performance is "highly deferential." *Id.* at 689. Further, there is a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. *Strickland,* 466 U.S. at 689-90.

The PCR judge noted that the Petitioner alleged "trial counsel was ineffective for failing to object to the stated cause of death of the victim, and discrepancies in the death certificate." (App. 824.) She further noted that the Petitioner argued that an autopsy or exhumation of the body should have taken place to prove the cause of death" and that the death certificates had been illegally modified in various ways. *Id.* The PCR judge noted that the Petitioner's trial attorneys testified at the PCR hearing that any alleged problems with the death certificates were irrelevant to the critical issues in the case and had been fully explored and evaluated. *Id.* The PCR judge concluded that trial counsel was not ineffective as to this issue.

In her habeas petition, the petitioner contends that trial counsel should have moved to exhume the victim's body. However, exhuming the victim's body was not necessary and was not the only manner through which the defense could question the cause of the victim's death. As noted above, trial counsel presented an expert who testified that in his opinion

the victim had died from "pulmonary edema" from "over-resuscitation" by medical personnel at the August Burn Center. (App. 564, 574.) The issue of whether the Petitioner's actions were the proximate cause of the Victim's death were fully explored and argued at trial. (App. 555; 561-64; 567- 68; 627-631; 674-678.) The discrepancies between the causes of death listed on the Georgia certificate and the South Carolina certificate were also fully explored. Applying the standard enunciated in *Strickland,* trial counsel's performance was well within the wide range of competent assistance. 466 U.S. at 691 (stating that counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary").

As to the Petitioner's allegations that an autopsy was never performed and the death certificates and autopsy report were falsified in some manner, these issues are not only procedurally barred, they are without merit. Other than her own conclusory allegations, the Petitioner has not presented any evidence that the death certificates or autopsy reports were forged or that an autopsy was never conducted. In fact, Dr. Burns testified that he conducted an autopsy on the victim and prepared an autopsy report, and defense expert Dr. Henderson testified that he had reviewed the autopsy report and medical records and disagreed with Dr. Burns' determination as to the cause of death. Additionally, at the PCR hearing, trial counsel stated she saw autopsy photographs. (App. 792.) Conclusory allegations unsupported by specifics are subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977); *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 298 (3rd Cir. 1991) (applicant cannot show deficiency "based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense"; rather, facts must be presented). Accordingly, this ground is without merit.

**Ground Two**

In Ground Two, the Petitioner contends that there is "no scientific proof to show the body being Autopsy, No Eye witness, or slides, photos as Evi." The Petitioner again asserts

there is no proof that an autopsy was actually conducted, based on her claim that the victim was Muslim and that he was buried without one being conducted according to the funeral home. The respondent asserts this claim is procedurally barred and without merit. The undersigned agrees.

This issue is not raised in the Petitioner's habeas petition in the context of an ineffective assistance of counsel context. The Petitioner raised this issue as a free-standing issue and the Petitioner did not raise this issue in her direct appeal in state court. When a state prisoner has defaulted his claims in state court, habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. at 750. The Petitioner has not alleged any cause and prejudice or that a failure to consider this claim will result in a fundamental miscarriage of justice.

Again, in any event, as noted above, Dr. Burns testified that he conducted an autopsy on the victim, and defense expert Dr. Henderson testified to reviewing the autopsy report and disagreeing with Dr. Burns' determination as to the cause of death. Additionally, as noted above, trial counsel stated she saw autopsy photographs. (App. 792.) There has been no evidence presented that the autopsy was not conducted or that the reports were forged, and the Petitioner's unsupported allegations alone are insufficient to refute the evidence discussed at trial. *See Zettlemoyer v. Fulcomer,* 923 F.2d 284, 298 (3rd Cir. 1991) (applicant cannot show deficiency "based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense"; rather, facts must be presented). Accordingly, this ground is without merit.

**Ground Three**

In Ground Three, the Petitioner contends that her *Miranda* rights were violated when the police took her statement, and when trial counsel allowed her to testify while she was

under the influence of prescription psychiatric medication. The Respondent contends this ground is procedurally barred and without merit. The undersigned agrees.

On February 23, 1998, during a pretrial hearing, the Petitioner was found competent to stand trial and waive her right to an attorney. (App. 42-43.) Dr. Thomas Behrmann testified that he found the Petitioner competent stand trial, criminally responsible, as well as competent to waive her right to an attorney. He noted that she had presented complaints of hallucinations and he agreed that the Petitioner had a significant degree of paranoia, but he felt that was best interpreted only as a personality disorder. He also testified that he prescribed her medication that would allow her to deal with her paranoid thoughts and effectively work with her attorneys. (App. 12-21.)

Officer Gray, who took the Petitioner's statement, testified that he read the Petitioner her *Miranda* rights, and the Petitioner waived those rights. He testified that she was not threatened, coerced, or promised anything. (App. 33-35.) The Petitioner contends that her request for an attorney was denied, and she alleges that she was promised that if she confessed she would be released on bond. (App. 54-55.) She claimed she was forced to confess, and that the officer was slapping the table when she denied culpability. She asserted she was scared and in shock from the victim's death, and stated she was not given her *Miranda* rights until after she completed the statement. (App. 52-61.)

The defense called psychiatrist Dr. Donna Schwartz-Watts, who testified that the Petitioner's low intellectual functioning and paranoid personality disorder could "impair her ability to voluntarily give a confession". (App. 71-75.) However, after a *Jackson v. Denno* hearing, the trial judge found the confession to have been voluntarily given after the Petitioner had knowingly and intelligently waived her *Miranda* rights. (App. 81-83.) The Petitioner raised the admissibility of her statement on direct appeal and the South Carolina Court of Appeals affirmed, noting that mental illness does not alone render a confession involuntary absent coercive police conduct causally related to the confession. (App. 717.)

At PCR, the Petitioner complained that if she was GBMI, her Fifth and Fourth Amendment rights were violated by allowing her to testify. She stated that MRIs and CAT scans of her brain showed no defects. (App. 768.) She later asserted it was improper to find her GBMI because no physical evidence had been presented of a defect in her brain. (App. 770.) At the PCR hearing, the Petitioner reasserted her complaints regarding the taking of her statement, and complained that while her attorneys objected to the statement, they did not move to have it suppressed. (App. 774-75.)

Counsel Johns testified that they discussed with Petitioner many times her decision to testify and the Petitioner always expressed her desire to testify. Johns also noted that she had no problem discussing the case with Petitioner or communicating with her, and she believed the Petitioner understood their discussions. (App. 780-83.) Counsel Bell recalled discussing with the Petitioner issues surrounding her mental capacity, and stated the Petitioner never disputed she had a mental illness at trial. (App. 806-07.) Bell also noted that they did moved to suppress the statement, but the trial court denied this motion. (App. 808-813.)

The PCR court rejected the Petitioner's claim that counsel should have objected to any evidence that the Petitioner was mentally ill. The PCR Court noted that the state and the defense experts both found that the Petitioner was mentally ill. The PCR court also rejected the Petitioner's contention that trial counsel were ineffective for failing to move to have the Petitioner statement suppressed. The PCR Court noted that trial counsel had moved to suppress the statement, but the motion was denied. (App. 824-25.)

As an initial matter, the undersigned notes that any issue that trial counsel were ineffective in putting the Petitioner on the stand because she was either mentally ill or on psychiatric medication is procedurally barred. The Petitioner did not raise this issue in her

PCR proceeding.[3]  Furthermore, the PCR court did not rule on this issue.  *Plyler v. State,* 424 S.E.2d 777 (S.C. 1992) (holding issue must be both raised to and ruled upon by PCR judge to be preserved for appellate review).  The PCR court ruled only on the Petitioner's allegation that trial counsel were ineffective for failing to "object to [her] being classified as having a mental condition."   That issue is different from the two raised now, i.e. that the Petitioner should not have been allowed to testify because she was either mentally ill or because she was on psychiatric medication.  Since she did not properly present this issue to the state's highest court, any claim that counsel were ineffective in putting the Petitioner on the stand because she was either mentally ill or because she was on psychiatric medication is procedurally barred in federal habeas corpus. *Coleman*, 501 U.S. 722 (issue not properly raised to the state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas).   When a state prisoner has defaulted his claims in state court, habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman,* 501 U.S. at 750.   The Petitioner has not alleged any cause and prejudice or that a failure to consider this claim will result in a fundamental miscarriage of justice.  In any event, her claims fail on the merits.

As to a claim her statement was involuntary, the state court of appeals clearly was not objectively unreasonable in affirming the decision of the trial judge to admit the evidence. In *Colrado v. Connelly*, 479 U.S. 157 (1986), the United States Supreme Court held that coercive police conduct is necessary for a statement to be found constitutionally involuntary, regardless of a defendant's mental condition. The Court rejected the notion that

---

[3]Although the Petitioner did ask whether she should have been allowed to testify if she was mentally ill, that was part of her main complaint that she was not mentally ill at all and thus could not have been convicted as guilty but mentally ill.  (App. 768.)

"a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional voluntariness". *Id.* at 164.

Here, the testimony from Officer Gray supports that the Petitioner made a free and voluntary waiver. Further, the Petitioner's statement was lucid and responsive, which counteracts any assertion that her mental condition precluded her from waiving her rights.

As to her claim that her attorneys were ineffective in putting her on the stand because she was mentally ill or under the influence of a psychiatric medicine, the Petitioner can show neither deficiency nor prejudice. Given that the Petitioner had been found competent to stand trial and she expressed her desire to testify, trial counsel was not ineffective for allowing her to do so. *See United States v. Teague*, 953 F.2d 1525 (11th Cir. 1992) (holding defense counsel must advise defendant of right to testify or not testify and consequences of each choice, but decision is ultimately up to defendant). Additionally, the Petitioner has not shown any prejudice. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3rd Cir. 1991) (applicant cannot show deficiency "based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense"; rather, facts must be presented). Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.

**Ground Four**

In Ground Four, the Petitioner contends her trial counsel was ineffective for: 1) failing to introduce evidence that the victim had allegedly molested the Petitioner's two year old daughter; 2) failing to use the battered women defense; and 3) coercing her to testify. The Respondent contends that these issues are without merit. The undersigned agrees.

*1) Evidence of alleged rape of daughter by victim*[4]

The Petitioner first contends her trial counsel was ineffective for failing to introduce evidence that the victim allegedly raped her two and a half year old daughter. The Respondent contends this issue is without merit. The undersigned agrees.

At trial, the Petitioner moved to be given truth serum or sodium pentathol and have her daughter placed under hypnosis to prove that her daughter told her that the victim had molested the Petitioner's daughter. (App. 89.) The trial judge denied the motion. *Id.* At trial, the Petitioner testified that her daughter told her the victim "ate her pooh pooh," but the victim denied it and left. She asserted the next time she saw the Petitioner he told her he was filing for divorce. She also asserted the victim was a homosexual, and that also made her believe the victim had sodomized her daughter. She asserted she could not tell anyone what the daughter had said because she thought they would take her kids away. (App. 387-92.)

Additionally, at trial, evidence was introduced that the Petitioner had filed a police report regarding the molestation of her daughter after noting her anal area was abnormally large. However, the suspect was thought to be Linda Reed, a black female, and police ultimately closed the case as unfounded after a physician examined the child. (App. 283-84.) On cross-examination, the Petitioner stated that when she took her daughter to the police, she could not say at that time that the victim was the one who had assaulted her daughter. Further, she denied that she listed the suspect as Linda Reed, claiming instead that Reed was the suspect in the alleged molestation of her son. (App. 432-33.)

---

[4]In her response, the Petitioner alleges that the Respondent has altered the trial documents because "these articles were black-out the use and mention of (daughter) . . . " (Pet'r's Mem. Opp. Summ. J. Mot. at 4.) The undersigned believes the Petitioner is referring to the Respondent's redaction of identifying information in the record regarding the Petitioner's daughter. It is apparent that the documents were redacted in accordance with this Court's privacy policy and not in any attempt, or part of any conspiracy, to conceal information.

Dr. Schwartz-Watts testified that she had reviewed records that the Petitioner had taken her daughter to the emergency room claiming the daughter had been molested, but the doctors could find no evidence of sexual abuse. (App. 472.) Dr. Schwartz-Watts also testified that the Petitioner believed that her daughter had been molested as part of a series of events that led the Petitioner to believe her life was falling apart. (App. 500.)

At the PCR hearing, the Petitioner testified that the victim had sodomized her daughter, and she had proof. (App. 769.) The Petitioner also claimed that she wanted to have either herself or her child hypnotized about the alleged abuse, to prove that it happened and she was telling the truth. (App. 773-74.)

At the PCR hearing, trial counsel Johns testified that they discussed the alleged molestation in the context of pursuing a "battered spouse" defense. Further, she testified that she and her co-counsel thought the proximate cause issue was stronger, and that while they did show the Petitioner had been abused throughout her life, she did not think they had sufficient evidence for a "battered spouse" defense. (App. 787.) Trial counsel Johns testified that she thought the matter was collateral and also she did not think that subjecting the Petitioner's young daughter to that would be beneficial. She also did not believe the daughter would have been found competent to testify. Further, Johns testified that she did not believe that those methods would prove the Petitioner did not intend to hurt her husband, but they used the evidence to show the Petitioner's state of mind. (App. 795-99.) At the PCR hearing, co-counsel Bell testified that while the Petitioner was emphatic that the molestation occurred, they had no evidence to corroborate it. (App. 814-16.)

The PCR court noted that the Petitioner did not have first-hand knowledge of the abuse or any evidence of the abuse, and trial counsel did not think the two year old child would be a competent witness. (App. 825.) The PCR court found trial counsel were not ineffective for failing to offer additional evidence of the daughter's alleged molestation by the victim. (App. 825.) She found that trial counsel strategically decided the proximate cause defense was stronger. *Id.* The court concluded that the trial counsel thought the

Petitioner's belief of the alleged molestation was one of the many stressors affecting the Petitioner's state of mind. *Id.*

As there was no evidence corroborating the Petitioner's allegations of molestation, trial counsel was not deficient for failing to introduce evidence of that the victim had molested the Petitioner's daughter and trial counsel made a strategical decision to pursue what they believed was a stronger defense. *See Savino v. Murray,* 82 F.3d 593, 599 (4th Cir. 1996) (rejecting habeas claim that attorneys should have pursued intoxication defense where petitioner offered no proof his alleged cocaine usage made him incapable of intent or deliberation); *Michael v. Crosby,* 430 F.3d 1310, 1322 (11th Cir. 2005) (concluding the state habeas court's analysis of counsel's attempt to present a learned-helplessness defense was not contrary to, and did not involve an unreasonable application of, *Strickland* because counsel's testimony that he made a tactical decision to pursue this defense rather than Battered Spouse Syndrome or Post-Traumatic Stress Disorder supports the state court's rejection of the ineffectiveness claim).

In any event, there Petitioner has not pointed to what evidence trial counsel should have introduced. In her response to the Respondent's motion for summary judgment, the Petitioner states that she was denied the right to use hypnosis and sodium pentathol. (Pet'r's Mem. Opp. Summ. J. Mot. at 3.) As noted above, the trial court denied the Petitioner's motion to give her sodium pentathol and hypnotize her daughter. Therefore, trial counsel cannot be ineffective for failing to present this "corroborating" evidence as the trial court had already denied such a motion.[5] Finally, the undersigned notes that at trial, as set out above, trial counsel did present testimony regarding the Petitioner's belief that the victim had molested her daughter. Accordingly, the Petitioner cannot show prejudice. Therefore, the PCR court's decision was not contrary, nor an unreasonable application of, clearly

---

[5]The undersigned notes that the Petitioner did not appeal this ruling on direct appeal. Thus, the claim that the trial court violated her rights by denying her motion is procedurally barred. Further, there is nothing in the record establishing that such evidence would have even been corroborating evidence.

established federal law. Furthermore, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.

*2. Failure to present "battered woman's defense"*

The Petitioner contends her trial counsel were ineffective in failing to present a battered woman's defense." At trial, the Petitioner testified that on June 4,1996, the victim had beaten her and she had suffered a black eye. (App. 377-79; 384.) The Petitioner also testified that the victim had hit her on at least ten occasions, and that she never reported it because she was afraid she would be kicked out of public housing. (App. 424-25.) On cross-examination, the Petitioner stated that she did not call police when she and the victim fought because she could fight him back and was not afraid of him. She testified that she could handle the victim in a fight and the victim even called her "the Warrior." She admitted that she fought him as much as he fought her. (App. 433-35.) Further, she admitted she set the victim on fire because she was mad at him for cheating on her. (App. 439; 448.)

As noted above, trial counsel Johns testified at the PCR hearing that she and co-counsel had discussed the alleged molestation in the context of pursuing a "battered spouse" defense, but they thought the proximate cause issue was stronger. Further, she did not think they had sufficient evidence for a battered spouse defense. (App. 787.) The PCR court did not specifically rule on this claim. (App. 825.) *Plyler v. State,* 309 S.C. 408, 424 S.E.2d 777 (1992) (issue must be both raised to and ruled upon by PCR judge to be preserved for appellate review). Since it would not have been preserved for review on the merits during the PCR appeal, it is barred in federal habeas. *See, e.g. Coleman v. Thompson,* 501 U.S. 722 (1991) (issue not properly raised to the state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas).

In any event, the claim also fails on the merits. Trial counsel was not deficient as the Petitioner's circumstances clearly did not support a battered spouse defense in South Carolina. The battered spouse defense is appropriate when the defendant has been the

victim of continuing abuse over a period of time, and the defendant believes she is in imminent danger from which escape is impossible even if the victim is not actively abusing her. *Robinson v. State*, 417 S.E.2d 88 (S.C. 1992).

> A battered woman suffers from "learned helplessness" as the "repeated batterings, like electrical shocks, diminish the woman's motivation to respond." This stems from the battered woman's belief that her batterer is more powerful than he actually is, and her fear of retaliation if she summons help. As a result, she ceases trying to escape even when the opportunity to do so is present.

*Id.* at 90. (Internal citations omitted).

Here, there was no evidence that the the Petitioner was the victim of continuing abuse that made her believe she was in imminent danger, that the victim was more powerful than her, or that she believed she was helpless. The Petitioner testified that she was not afraid of the victim and she was a "warrior" and could fight back. (App. 377-378; 409; 433.) As the facts would not support a battered spouse defense, trial counsel could not have been deficient for failing to seek or pursue it. *See Savino v. Murray,* 82 F.3d at 599 (rejecting habeas claim that attorneys should have pursued intoxication defense where petitioner offered no proof his alleged cocaine usage made him incapable of intent or deliberation); *Michael v. Crosby,* 430 F.3d at 1322 (concluding the state habeas court's analysis of counsel's attempt to present a learned-helplessness defense was not contrary to, and did not involve an unreasonable application of, *Strickland* because counsel's testimony that he made a tactical decision to pursue this defense rather than Battered Spouse Syndrome or Post-Traumatic Stress Disorder supports the state court's rejection of the ineffectiveness claim). Additionally, the Petitioner has not shown prejudice. Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.

    *3. Advice to testify*

Finally, the Petitioner contends her trial counsel were ineffective for coercing her into testifying. At PCR, the Petitioner complained that if she was GBMI, her Fifth and Fourth Amendment rights were violated by allowing her to testify. She asserted that MRIs and CAT scans showed she had no defects in her brain. She did not claim she was coerced into testifying. (App. 768.)

Trial counsel Johns testified that they discussed with the Petitioner many times her decision about whether to testify, and the Petitioner always stated that she wanted to testify. Additionally, trial counsel Johns noted she had no problem discussing the case with the Petitioner or communicating with her, and believed the Petitioner understood their discussions. (App. 780-83.) The PCR court did not rule on this claim. Therefore, as an initial matter, the issue is procedurally barred. *Plyler v. State,* 424 S.E.2d 777 (S.C. 1992) (holding issue must be both raised to and ruled upon by PCR judge to be preserved for appellate review).

In any event, this issue fails on the merits. As set forth above, trial counsel noted that the Petitioner always wanted to testify and she had been found competent to stand trial. Prior to testifying, the trial court examined the Petitioner to determine whether her decision was voluntary. The Petitioner told the trial court that she understood her right to testify and was making the choice to do so voluntarily. She also noted she understood the decision was entirely up to her, and that she was satisfied with trial counsel. (App. 347-48.) "[A] criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial." *United States v. Teague,* 953 F.2d 1525, 1532 (11th Cir.1992). Further, "[t]his right is personal to the defendant and cannot be waived either by the trial court or by defense counsel." *Id.* Therefore, "[a] criminal defendant cannot be compelled to remain silent by defense counsel." *Id.* "Absent evidence of coercion, legal advice concerning the defendant's right to testify does not constitute ineffective assistance of counsel." *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002) (noting that "the advice provided by a criminal defense lawyer on whether his client should testify is a paradigm of the type of tactical

decision that cannot be challenged as evidence of ineffective assistance") (internal quotation marks omitted). Thus, this ground is without merit.

Finally, to the extent that the Petitioner is challenging the way her habeas counsel pled and argued her grounds for relief, such a claim is not cognizable in federal habeas corpus. Generally, a federal habeas court cannot grant relief based on errors occurring during state collateral review proceedings, including the alleged ineffective assistance of habeas counsel. *See Wright v. Angelone,* 151 F.3d 151, 159 (4th Cir.1998). Therefore, the Petitioner is not entitled to any relief on a claim that her state habeas counsel was ineffective.

## IV. <u>CONCLUSION</u>

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (#16) be GRANTED and the Petition be DISMISSED WITH PREJUDICE.

IT IS SO RECOMMENDED.


Bruce Howe Hendricks
United States Magistrate Judge

November  24, 2009
Greenville, South Carolina


**The petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).